UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MUNN, DARRELL MOORE, MARCO GOMEZ, ARMANDO MONTEMAYOR, ARTURO MONTEMAYOR, MICHAEL NILLES, LEONARD CASAMASSIMO, JAIMEE MOORE, CORENE CASAMASSIMO, CARLENE GOMEZ, LORENA MONTEMAYOR, MARY MONTEMAYOR, ARTURO MONTEMAYOR, SR., E.E., a minor, S.O., a minor, E.O., a minor, L.R., a minor, A.R., a minor, W.R., a minor, E.R., a minor, X.R., E.S., and A.S., a minor, Plaintiffs, v. CITY OF AURORA, a municipal corporation, and JO ANN OSBERG, in her individual and official capacity, Defendants. | No. 17 C 5296<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

In response to an Illinois Freedom of Information Act ("FOIA") request from an incarcerated felon ("Felon"), Defendants City of Aurora and Jo Ann Osberg released the personnel files containing the addresses, phone numbers, and social security numbers of the police officers who participated in the investigation that led to his conviction and incarceration. Plaintiffs John Munn, Darrell Moore, Marco Gomez, Armando Montemayor, Arturo Montemayor, Michael Nilles, Leonard Casamassimo, Jaimee Moore, Corene Casamassimo, Carlene Gomez, Lorena Montemayor, Mary Montemayor, Arturo Montemayor Sr., E.E.,a minor, S.O., a minor, E.O., a minor, L.R.,a minor, A.R., a minor, W.R., a minor, E.R.,a minor, X.R., E.S., and A.S., a minor, are those police officers whose personnel files Defendant Osberg mailed

to the Felon as well as their family members. After discovering the release of this information, Plaintiffs brought this civil rights action against the City of Aurora and Jo Ann Osberg, in both her individual capacity and her official capacity as the FOIA Officer for the Aurora Police Department, pursuant to 42 U.S.C. § 1983. Plaintiffs bring claims against the City of Aurora and Osberg in her individual capacity for violation of their constitutional rights, as well as three state law claims. Plaintiffs advance their constitutional claims (Count I against the City of Aurora, Count II against Osberg in her individual capacity), pursuant to the Fourth and Fourteenth Amendment, under both a state-created danger theory and a right to informational privacy theory. Defendants move to dismiss the federal claims for failure to state a claim upon which relief can be granted. Defendants further move to dismiss Count I for failure to properly allege a *Monell* claim and to dismiss Count II on the basis of qualified immunity. Because Plaintiffs have sufficiently met their pleading burden to survive a motion to dismiss, the Court declines to dismiss Plaintiffs' claims on these grounds. Thus, the Court denies Defendants' motion to dismiss.

## BACKGROUND[1]

In October 2015, Defendants responded to a FOIA request from the Felon. The Felon is known to be associated with the upper levels of a particularly violent gang known as the "Latin Kings." The Officer Plaintiffs each participated in the investigation, which resulted in an 88-year sentence for the Felon. Defendants mailed the FOIA response, which contained the Officer Plaintiffs' personnel files, to the Felon at the Menard Correctional Center. These personnel files

---

[1] The facts in the background section are taken from Plaintiff's Amended Complaint [37] and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). Though Plaintiffs amended their complaint after the motion to dismiss was briefed, they merely edited the names of some of the plaintiffs; the substance is the same as the original complaint [1]. Thus, the briefing on the motion to dismiss still applies.

were "largely un-redacted." Doc. 37 ¶ 18. The un-redacted information included the Officer Plaintiffs' names, home addresses, social security numbers, phone numbers, and information pertaining to their family members. The Felon possessed this information until approximately December 2016.

The Officer Plaintiffs discovered that Defendants revealed this information to the Felon in late 2016, and subsequently filed this lawsuit. In approximately March 2017, the City of Aurora conducted an audit of its FOIA response procedures and determined that this was not the only time that the City of Aurora disclosed personal information in response to a FOIA request:

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.  State-Created Danger (Counts I and II)**

Plaintiffs allege that Defendants violated their due process rights under a state-created danger theory.  Defendants argue that, because the Amended Complaint does not explicitly mention this theory, the Court should not permit Plaintiffs to proceed on it.  Defendants' argument misstates the requirements of Rule 8.  The Seventh Circuit has held that "the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."  *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).  Under Rule 8, plaintiffs need not cite the law in their complaints; they are "merely required to relate sufficient facts to state a plausible claim for relief under *Twombly* and *Iqbal*."  *Escarzaga v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, No. 15 C 2568, 2015 WL 6445606, at *4 (N.D. Ill. Oct. 23, 2015).  The fact that Plaintiffs do not explicitly specify the state-created danger theory in their Amended Complaint does not foreclose the potential of establishing such a claim, so long as they have pleaded sufficient facts to establish such a claim.

The question then becomes whether Plaintiffs have pleaded sufficient facts to establish a state-created danger claim.  Defendants argue that Plaintiffs have not established the necessary elements of this claim.  Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).  There are two narrow exceptions to the *DeShaney* rule: (1) when the state has a "special relationship" with the person such as "when it has custody over a person, it must protect him because no alternate avenues of aid exist," and (2) under the state-created danger exception, "'liability exists when the state affirmatively places a particular individual in a position of danger

4

the individual would not have otherwise faced.'" *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quoting *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)).

For Plaintiffs to establish a claim under the state-created danger exception, (1) "the state, by its affirmative acts, must create or increase a danger" to them, (2) "the failure on the part of the state to protect [Plaintiffs] from such a danger must be the proximate cause" of their injury, and (3) the state's failure to protect Plaintiffs "must shock the conscience." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817–18 (7th Cir. 2007).

First, Plaintiffs must allege that the state either created or increased the danger to them. "If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers v. Devito*, 686 F.2d 616, 618 (7th Cir. 1982). However, to create or increase danger "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015) (citation omitted) (internal quotation marks omitted). Essentially, the Court must decide whether "the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage v. Bd. of Com'rs of Vanderburgh County*, 548 F.3d 595, 600 (7th Cir. 2008).

Defendants argue that their actions releasing the personnel files only pose a potential danger to Plaintiffs, not the actual danger necessary to state a claim. In support of their argument, Defendants point to *Sandage*, where the Seventh Circuit held that the defendants' failure to revoke an inmate's work-release privilege after the plaintiffs' decedents complained that he was harassing them did not constitute a state-created danger. *Id.* at 596. In that case, allowing the inmate to have work-release privilege perhaps posed some danger to the

5

community, in light of his conviction. But at that point, the danger posed to the plaintiffs' decedents was merely potential. The defendants' actions did nothing to specifically place the plaintiffs' decedents in danger, and it was the defendants' inaction after the plaintiffs' decedents complained about the inmate (and were, at that point, in actual danger) that ultimately resulted in their deaths. Here, Plaintiffs have alleged that the Defendants' actions caused actual danger to them. Plaintiffs allege that by placing the Officer Plaintiffs' personnel files in the hands of the Felon, whom they had helped put in prison for decades, Defendants placed the Plaintiffs in danger.

Defendants perhaps confuse "danger" with whether the private actor needs to actually commit harm to the Plaintiffs for a state-created danger theory to apply. If the government throws an individual into a snake pit, and the individual is not harmed by the snakes, but hurts himself escaping the pit, the government has still placed the individual in danger that has caused the individual harm. For example, in *White v. Rochford*, the Seventh Circuit found that plaintiffs had properly pleaded a state-created danger claim. 592 F.2d 381, 384–85 (7th Cir. 1979). There, police officers arrested the plaintiffs' uncle while he was driving the plaintiffs (three children), and the officers left the children in the car on the side of the road on a cold night. *Id.* at 382. In the process of removing themselves from the danger, the children "suffered mental pain and anguish" and one child, an asthmatic, required hospitalization. *Id.* Similarly, Plaintiffs allege an actual danger in that the Felon possessed the personnel files, containing personal, private information, of the Officer Plaintiffs who helped put the Felon in prison. And they allege that they have suffered actual injury while attempting to alleviate this danger, including installing home electronic security systems and even relocating. *See* Doc. 37 ¶ 24. For these reasons, the Court does not find Defendants' argument that Plaintiffs are only in potential danger persuasive.

6

This discussion blurs into Defendants' second argument, which is that, to the extent any danger is present, they did not create or increase it. Again, the question is whether Defendants' actions placed Plaintiffs in danger. According to Defendants, this is the type of danger that Plaintiffs signed up for when the Officer Plaintiffs became police officers. *See Witkowski v. Milwaukee County*, 480 F.3d 511, 513 (7th Cir. 2007) ("[S]omeone who chooses to enter a snake pit or a lion's den for compensation cannot complain."). *Witkowski* involved a deputy sheriff who sued after being shot on duty when two fellow deputies failed to take security precautions (previously determined necessary) against the shooter. *Id.* at 511–12. The Seventh Circuit found that the injured deputy sheriff had volunteered for the danger when he became an officer, and thus the danger was not state-created. *Id.* at 513. The present facts are different from *Witkowski*. The officers involved here were not on duty when the alleged danger occurred. More importantly, unlike *Witkowski*, where the defendants did nothing to aid the shooter in obtaining the gun and discharging it in the plaintiff's direction, Plaintiffs in this case allege that Defendants essentially helped the Felon take his first step towards harming them. It is plausible that the information that Defendants provided to the Felon in the Officer Plaintiffs' personnel file could be used to harm Plaintiffs.[2] Moreover, the danger associated with the Felon, who has ties to the upper levels of a violent gang and clear reason for animus against the Plaintiffs, possessing this type of information is apparent. The Sixth Circuit agrees: in *Kallstrom v. City of Columbus*, it considered a case where the city turned over personnel files of police officers to the legal defense team of a violent gang member whom the officers helped send to jail (the files were then passed

---

[2] Defendants contend that the information contained in the Officer Plaintiffs' personnel files is already public, and so to the extent that Plaintiffs faced any danger from the Felon, it was unchanged by the release of the un-redacted personnel files. *See* Doc. 26 at 8; Doc. 20-1. At this stage in the litigation, the Court is confined to the allegations in the Amended Complaint. Based on those allegations, the Court finds it plausible that the information contained in the personnel files could have significantly contributed to the security threat that officers faced.

7

on to the gang member) and held that the city's actions "substantially increased the officers' and their families' vulnerability to private acts of vengeance."[3] 136 F.3d 1055, 1067 (6th Cir. 1998) (cited approvingly by *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)). The facts of the case are virtually the same as the facts alleged here. Thus, Plaintiffs have adequately pleaded this aspect of their claim.

Second, Plaintiffs must allege that Defendants' failure to protect them from the danger proximately caused their injury. Defendants do not address whether Plaintiffs have met this element, and so the Court treats it as adequately alleged.

Finally, Defendants' actions must shock the conscience. Mere negligence, or even gross negligence, does not rise to the level of a constitutional violation. *McDowell v. Vill. of Lansing*, 763 F.3d 762, 766 (7th Cir. 2014). At the least, the state must act with deliberate indifference. *Id.* Cases that establish a claim under the state-created danger theory are "rare and often egregious." *Doe*, 782 F.3d at 917 (citation omitted) (internal quotation marks omitted). The courts have determined that articulating exactly what qualifies as an act that shocks the conscience "has proven difficult," *McDowell*, 763 F.3d at 766, and so it is instructive to consider the facts underlying other cases where the courts have found a constitutional violation. *See, e.g.*, *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012) (police arrested mentally ill woman in a safe neighborhood and released her in a significantly more dangerous neighborhood, where she was physically and sexually assaulted); *Monfils*, 165 F.3d at 520 (despite their assurances that they would not provide his identity, police provided tape of informant's report to those against whom

---

[3] Defendants attempt to undermine *Kallstrom* with *Hart v. City of Little Rock*, yet another § 1983 case brought by police officers against their city for releasing their personnel files to the legal defense team of a felon against whom they had helped bring charges (the personnel files eventually made their way to the felon). 432 F.3d 801, 803 (8th Cir. 2005). This attempt is unpersuasive: though the Eighth Circuit ultimately decided on other grounds that the city should have been granted judgment as a matter of law, it "assume[d] without deciding that [the city's] release of [the police officers'] personnel files created sufficient danger to implicate constitutionally protected privacy interests." *Id.* at 805.

he informed, who then took their revenge by murdering the informant); *Kallstrom*, 136 F.3d at 1067 (city provided police officers' personnel files to the legal defense team of a violent gang member whom the officers had helped put in prison). *But see McDowell*, 763 F.3d at 766–67 (officer responding to a multiple person altercation ordered everyone to get on the ground and then failed to prevent one of the men who complied from being kicked in the head by a man who did not comply).

*Monfils* and *Kallstrom* are most helpful here. In both cases, the defendants provided the dangerous private actors with information to aid them in retaliating against the plaintiffs (or the plaintiffs' decedent). *Kallstrom*, as mentioned above, is directly on point with the facts present in this case. Moreover, the cases in which the courts declined to allow a state-created danger claim to proceed because it did not meet this third requirement were deciding motions for summary judgment, where the parties had developed the facts of the case. *See McDowell*, 763 F.3d at 766–67; *King*, 496 F.3d at 819. Here, Plaintiffs have alleged that Defendants took actions that put them in danger, and they have alleged that Defendants took these actions "knowingly, recklessly, and/or intentionally." Doc. 37 ¶ 20. In light of this, the Court finds that Plaintiffs have sufficiently alleged a danger of constitutional dimension.[4]

## II.     *Monell* Claim (Count I)

In Count I, Plaintiffs bring a *Monell* claim alleging that the City of Aurora, through Osberg, established a policy, practice, or custom of repeated disclosure of highly sensitive, prohibited information in response to FOIA requests. Defendants seek dismissal of this *Monell* claim, arguing that Plaintiffs have not adequately alleged facts allowing the Court to draw a reasonable inference that the City of Aurora maintains such a policy, practice, or custom.

---

[4] Because the Court has found that Plaintiffs have sufficiently pleaded Fourteenth Amendment violations for Counts I and II under a state-created danger theory, it declines to reach the parties' arguments regarding whether those claims could proceed under a right to informational privacy theory.

Liability under *Monell* may be premised on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). To adequately allege a *Monell* policy or practice claim, Plaintiffs must "plead[ ] factual content that allows the Court to draw the reasonable inference that the [City of Aurora] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted).

Defendants complain that Plaintiffs' allegations refer only to problems they personally experienced and thus cannot give rise to a claim for a widespread policy or practice. But recently, the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). This means that a plaintiff need not identify other examples of the complained of practice in order to state a *Monell* claim; rather, a plaintiff may rely solely on his own experience. *See id.* at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)).

Although Plaintiffs' allegations regarding their own experiences would allow them to move past a motion to dismiss, they have included allegations concerning other occasions as well. *See Barwicks v. Dart*, No. 14-CV-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, single incident cannot establish *Monell* claim, but at the motion to dismiss stage, a plaintiff "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists" (emphasis in original)). Plaintiffs also indicate that one of the Defendants conducted an audit of its FOIA responses and found that City of Aurora employees, including Osberg, "repeatedly knowingly, recklessly, and/or intentionally disclosed private and personal information in response to FOIA requests." Doc. 37 ¶ 26. Plaintiffs added in their response to Defendants' motion to dismiss that the audit revealed that Defendants had released personal information regarding one of the Officer Plaintiffs to yet another incarcerated gang member.[5] Doc. 24 at 12. Plaintiffs have thus sufficiently alleged a pattern of conduct to state a *Monell* claim.

## III.    Qualified Immunity (Count II)

Defendants assert that Osberg is entitled to qualified immunity for her actions and thus, the Court should dismiss Count II. Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (internal quotation marks omitted). "In other words, qualified immunity shields from liability [defendants] who act in ways they reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (internal quotation marks omitted). Once raised by the defendant, "a plaintiff must show (1) that the defendant violated a constitutional right, and (2) that the right

---

[5] The Court can consider information in Plaintiffs' response to the motion to dismiss so long as the information contained therein is consistent with the allegations in the Amended Complaint. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001).

was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." *Id.*

Because it has already determined that Plaintiffs have shown that Defendants violated a constitutional right, the Court turns to whether the right was clearly established. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Dist. of Columbia v. Wesby*, -- U.S. --, 138 S. Ct. 577, 589 (2018). The burden of showing that a rule is clearly established falls to the plaintiff. *Doe*, 782 F.3d at 915. Although the plaintiff does not need to direct the Court to a case directly on point, *id.*, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply," *Wesby*, 138 S. Ct. at 590. Moreover, the rule must "clearly prohibit the [official's] conduct in the particular circumstances before him." *Id.* According to Plaintiffs, the stated-created danger theory is a clearly established rule that clearly prohibited Defendants' behavior. In support of this, they point to *Monfils*, the case where the plaintiffs' decedent provided police officers with a tip that a co-worker was planning to steal from their employer, and asked repeatedly that his identity remain anonymous. 165 F.3d at 513–15. In spite of this, police officers provided a tape of the man's phone call to his co-worker, who was then able to identify the man and retaliated by murdering him. *Id.* The Seventh Circuit not only affirmed that the police officer violated the man's constitutional rights, but also held that the officer was not entitled to qualified immunity. *Id.* at 518. In addition, as noted in earlier discussions, *Monfils* approvingly cited *Kallstrom*, a Sixth Circuit case with virtually the same fact pattern as the one Plaintiffs alleged in their complaint. *Id.* at 516. It is true that, in *dicta*, the Seventh Circuit questioned whether the Supreme Court superseded *Monfils* in *Sandage*. 548 F.3d at 599 (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 125 S. Ct. 2796, 162 L. Ed.

12

2d 658 (2005)). However, *Sandage* had already taken pains to distinguish its case, where no state-created danger was present, from *Monfils*, and future Seventh Circuit cases have cited *Monfils* as good law. *See, e.g.*, *Doe*, 782 F.3d at 917; *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 655 (7th Cir. 2011).

At this stage in the litigation, the Court can only consider the allegations that Plaintiffs have set forth in their Amended Complaint. These allegations include that Osberg "knowingly, recklessly, and/or intentionally[] disclosed significant facts details about Plaintiffs' private and personal lives to a known, violent felon who was incarcerated, in part, due to the work of these very Plaintiff officers." Doc. 37 ¶ 20. Moreover, the Amended Complaint alleges that Osberg "knew" that releasing the information "would put the Plaintiff officers and their families in a state of compromised safety." *Id.* ¶ 21. Taking these allegations as true, if Osberg knowingly and intentionally gave private, personal information about Plaintiffs to a violent felon, knowing that her actions would compromise Plaintiffs' safety, her actions clearly fell under the clearly established theory of state-created danger. This legal principle is well-established and so would not allow a reasonable official to conclude otherwise. Thus, the Court finds that Osberg is not entitled to dismissal for qualified immunity at this time.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss [18].

Dated: February 28, 2018

_____
SARA L. ELLIS
United States District Judge

13