IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MUNN, ET AL.<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF AURORA, ET AL.**<br><br>**Defendants**. | Case No. 17 cv 05296<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Plaintiff police officers and their families, John Munn, et al., bring this lawsuit against Defendants City of Aurora ("Aurora") and Jo Ann Osberg ("Osberg") alleging violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and various state tort law claims. Before this Court is Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion is granted on the federal claims and the state claims are dismissed without prejudice.

## BACKGROUND

The following facts are taken from the parties' Joint Statement of Undisputed Facts. On September 16, 2015, Jesse Alvarez, an inmate at Menard Correctional Center, sent a Freedom of Information Act ("FOIA") request to the Aurora Police Department ("APD"), seeking the personnel records of Plaintiff officers. (Dkt. 91 at ¶¶24-31.) Defendant Osberg, Records Manager/FOIA Officer for the APD, handled Alvarez's FOIA request. (*Id.* at ¶¶10; 32.) Osberg knew that Alvarez was incarcerated for attempted murder and understood that it could be dangerous if a

1

prisoner like Alvarez came into possession of officers' personal information. (*Id.* at ¶¶18; 33; 98.)

Osberg followed a routine process when handling FOIA requests. She first gathered all responsive documents and combined them into a single PDF. (*Id.* at ¶16.) Using Adobe Pro, she then applied the necessary redactions. (*Id.*) Osberg knew that personal information such as social security numbers, home addresses, telephone numbers, personal email addresses, spouse names, and financial information had to be redacted in every FOIA response. (*Id.* at ¶50.) Osberg reviewed the documents three times to apply redactions using a bottom-to-top approach. (*Id.* at ¶¶19-21.) During her first review, she made redactions to the bottom of each page. (*Id.* at ¶19.) During the second review, she made redactions to the middle of each page, and during her third and final review, she made redactions to the top of each document. (*Id.* at ¶¶20-21.) This is the same method Osberg used when reviewing Alvarez's FOIA response. (*Id.* at ¶41.)

On September 28, 2015, Osberg completed Alvarez's FOIA request, printed the responsive documents, and mailed them to Alvarez. (*Id.* at ¶39.) Osberg did not review the physical documents to be mailed to Alvarez after printing them. (*Id.*) There was also no policy in place at the APD requiring Osberg's supervisor or the legal department to review FOIA responses and such oversight did not occur as a matter of practice. (Dkt. 104 at ¶¶122;125; Dkt. 91 at ¶36.)

Although many of the pages contained proper redactions, 196 of the 695 pages of documents sent to Alvarez contained unredacted personal information,

such as home addresses, phone numbers, and financial information, of the subject officers[1]. (Dkt. 91 at ¶40; 43-45.) Osberg does not know how certain personal information was left unredacted, but testified that she did not purposefully fail to redact such information. (*Id.* at ¶¶41; 48; 52.)

On or about November 14, 2016, Alvarez sent a letter to Plaintiff Arturo Montemayor at his home address, explaining that he had obtained Montemayor's address through a FOIA request to the APD. (*Id.* at ¶¶56-57.) Montemayor reported the letter to the APD, around which time Osberg first learned that Alvarez's FOIA response contained unredacted personal information. (*Id.* at ¶¶66; 68.) The APD audited Osberg's FOIA responses and discovered two other instances where Osberg had failed to redact an officer's personal information and that information was sent to an inmate. (*Id.* at 88-89.) Osberg was terminated from her position at the APD in December 2016. (*Id.* at ¶55.)

Plaintiffs bring the current suit against Osberg and the City of Aurora alleging that the release of their personal and private information to Alvarez violates their substantive due process rights under 42 U.S.C. § 1983 (Counts I and II) and various state tort laws (Counts III through VII).

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] Although Alvarez had not requested any information about Plaintiff Arturo Montemayor, the response also included his personal information. (Dkt. 91 at ¶60.) Osberg admits this was improper. (*Id.*)

3

matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## ANALYSIS

### I. § 1983 Substantive Due Process Claims

Plaintiffs allege that Defendants violated their Fourth and Fourteenth Amendment due process rights under the state-created danger theory. The Supreme Court has cautioned that the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation," so generally, a "State's

4

failure to protect an individual against private violence [or injury] simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197; 202 (1989). The state-created danger exception is a "narrow" exception to this rule, "reserved for egregious conduct by public officials." *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) (quotation omitted). To establish a due process claim under the state-created danger exception Plaintiffs must demonstrate that: (1) Osberg and Aurora, "by [their] affirmative acts, created or increased a danger to the plaintiff[s]"; (2) Osberg's and Aurora's "failure to protect against the danger caused the plaintiff[s'] injury; and (3) the conduct in question shocks the conscience." *Id.* (quotation omitted).

Defendants argue that they are entitled to summary judgment because the evidence fails to demonstrate conscience-shocking conduct. While this "standard lacks precise measurement," "[o]nly conduct falling toward the more culpable end of the spectrum shall be found to shock the conscience." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818-19 (7th Cir. 2007). Mere negligence, or even gross negligence, does not give rise to liability under § 1983. *McDowell v. Vill. of Lansing*, 763 F.3d 762, 766 (7th Cir. 2014). At the very least, deliberate indifference, meaning "conscious disregard of known or obvious dangers," is required. *Hoeppner*, 939 F.3d at 876; *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998). The Court first assesses whether this standard is met with respect to Plaintiffs' due process claim against Osberg.

As Plaintiffs emphasize, Osberg certainly knew the serious dangers posed by a felon's possession of officers' personal information. (Dkt. 91 at ¶33; 98.) But there is no evidence to suggest that Osberg sent the Alvarez FOIA response in *conscious disregard* of these known dangers. It is undisputed that Osberg did not know that the Alvarez FOIA response contained unredacted personal information at the time she sent it. (*Id.* at ¶68.) Without such knowledge, Osberg could not have deliberately disregarded the dangers posed by the leaked information. Neither do Plaintiffs present evidence that Osberg had reason to suspect that the Alvarez FOIA response contained unredacted personal information. To the contrary, Osberg reviewed the responsive documents using her tri-part method (*id.* at ¶41), which at the time she had no reason to question.[2] She intended to and attempted to redact *all* the Plaintiffs' personal information as evidenced by her testimony that she did not purposefully release officer information (*id.* at ¶52) and the fact that much of the personal information in the Alvarez FOIA response was successfully redacted. (*Id.* at ¶40; 48.)

Plaintiffs argue that Osberg failed to take necessary precautions against the release of officers' personal information to inmates, citing to the lack of adequate oversight and policies or protocols to ensure that inmate FOIA requests were properly handled. First, the lack of such institutional precautions bears only on the City of Aurora's actions, not on Osberg's, as she is being sued in her individual capacity, not

---

[2] The audit revealing that Osberg had twice previously released officers' personal information to an inmate took place a year after Osberg sent the Alvarez FOIA response. (Dkt. 91 at ¶88.)

her official capacity as the APD's FOIA Officer.[3] Second, even if the lack of these precautions was relevant, at the most it establishes negligence. Osberg cannot be held constitutionally liable on the basis of errors she did not actually know existed or did not even have reason to suspect existed, even if she might have learned of them had she taken additional precautions.

Plaintiffs cite to *Kallstrom v. City of Columbus* and *Monfils v. Taylor*, arguing that they compel the Court to reach an alternate conclusion. 136 F.3d 1055 (6th Cir. 1998); 165 F.3d 511 (7th Cir. 1998). In *Kallstrom*, the City of Columbus provided police officers' personnel files to the legal defense team of a gang member arrested by the officers. 136 F.3d at 1059. The Sixth Circuit held "that the City's policy of *freely releasing* this information from the undercover officers' personnel files…creates a constitutionally cognizable 'special danger,' giving rise to liability under § 1983." *Id.* at 1067 (emphasis added). In *Monfils*, an informant (Monfils) made several calls to police asking that the tape of an anonymous call he made not be released to the coworker on whom he had informed. 165 F.3d at 513-15. Despite their assurances of maintaining his anonymity, police took no action to ensure that the tape would not be released, and subsequently released the tape to the coworker, who murdered Monfils shortly thereafter. *Id.* The Seventh Circuit held that these facts supported a due process violation under the state-created danger theory. *Id.* at 520.

---

[3] Plaintiffs rely on *Whitted v. Dart*, No. 12 C 2461, 2014 WL 2819004 (N.D. Ill. June 23, 2014), for support. But that case named the defendant police sheriff in his *official capacity* and was assessed under the standards set forth in *Monell*.

7

The key distinction between these cases and the present is that the release of private information in *Kallstrom* and *Monfils* was intentional, or at least reckless.[4] To the contrary, the release of information in the present case was inadvertent. The defendants in *Kallstrom* and *Monfils* took no steps to ensure that sensitive information was not released. Osberg intended to redact the personal information and attempted to redact the personal information, partially producing such information unknowingly and inadvertently. The case law establishes that the intentional release of private information in the face of known dangers supports a finding of deliberate indifference necessary for a due process violation, while the inadvertent release of such information does not. *See for example, Weisberg v. Riverside Twp. Bd. of Educ.*, 180 F. App'x 357, 365 (3d Cir. 2006) (the inadvertent disclosure of private medical information did not rise to the level of a constitutional violation because "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.") (quotation omitted).

No reasonable jury could find that Osberg had the mens rea required to violate Plaintiffs' substantive due process rights under the state-created danger exception.[5] Because Osberg cannot be found to have violated Plaintiffs' due process rights, Plaintiffs' due process claim against the City of Aurora under *Monell v. Dept. of Soc.*

---

[4] Plaintiffs confusingly argue that in these "cases, the intentionality of the release of the private information was not dispositive." (Dkt. 96 at 8). Rather, according to Plaintiffs, those case focus on whether the defendants in the cases acted with gross negligence, reckless disregard or deliberate indifference. *Id.* But terms like "gross negligence" and "deliberate indifference" go directly to the intentionality of one's actions.

[5] Because this Court grants summary judgment on the merits, the Court does not address Osberg's qualified immunity argument.

*Servs.*, 436 U.S. 658 (1978) must also be dismissed. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). Summary judgment is granted on Counts I and II.

## II. State Law Tort Claims

The remainder of Plaintiffs' claims arise under state law. As summary judgement is granted on Plaintiffs' federal claims, this Court relinquishes its jurisdiction over any supplemental state law claims, which Plaintiffs may now pursue in state court. *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) ("[W]hen all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (quotations and citations omitted).

### **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted as to Counts I and II. Counts III through VII are dismissed without prejudice.

E N T E R:

Dated: March 6, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge